UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LEXINGTON INSURANCE CO., Plaintiff, v. DSC LOGISTICS, INC., Defendant. | ) | Case No. 09-cv-7003 |
| ALLIANZ GLOBAL RISK U.S. INSURANCE CO., Intervenor-Plaintiff, v. DSC LOGISTICS, INC., Defendant. | ) | Judge John W. Darrah |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Lexington Insurance Co. ("Lexington"), filed this declaratory-judgment action against DSC Logistics, Inc. ("DSC"), seeking a declaration that Lexington does not have a duty to defend and indemnify DSC with regard to claims asserted against DSC in a pending action in an Illinois state court. On January 8, 2010, DSC filed a Motion to Dismiss, which is presently before the Court. DSC moves to dismiss the Lexington Complaint with prejudice pursuant to Federal Rule of Civil Procedure 12(b)(3) for

improper venue and Rule 12(b)(1) for lack of ripeness.[1] For the reasons stated below, DSC's Motion is denied.

**BACKGROUND**

The following facts are taken from the allegations in Lexington's Complaint and are accepted as true for purposes of deciding this Motion to Dismiss. Lexington is a Delaware corporation with its principal place of business in Boston, Massachusetts. At issue in this action are two occurrence-based Commercial Property Insurance Policies, written by Lexington and naming DSC as the insured. These policies insure DSC against, among other things, claims that DSC damaged the property of DSC's customers. These policies were in effect from August 1, 2006, to August 1, 2008.

On January 29, 2007, DSC, an Indiana corporation, having its principal place of business in Des Plaines, Illinois, entered into a Distribution Service Agreement with Culligan International Co. ("Culligan"). The Agreement obligated DSC to provide certain outsourced logistics services to Culligan, including warehousing and shipping services. In June 2008, Culligan filed a complaint against DSC in the Circuit Court of Cook County, Illinois, seeking contractual damages based on DSC's alleged breaches of the Distribution Service Agreement (the "Culligan Lawsuit"). Culligan filed an amended complaint in that action on November 10, 2008. In its amended complaint, Culligan sought recovery for, among other things, damages to Culligan's property allegedly caused by DSC.

---

[1] On February 16, 2010, the Court granted a motion to intervene by Allianz Global Risk U.S. Insurance Co. ("Allianz"), who then filed a separate complaint for declaratory judgment against DSC and, with leave of the Court, a response to DSC's Motion to Dismiss.

DSC took several actions in the Culligan Lawsuit without the knowledge or consent of Lexington: On December 1, 2008, DSC filed a motion to dismiss Culligan's amended complaint. On May 15, 2009, after DSC's motion was denied, DSC filed its answer and affirmative defenses to Culligan's amended complaint. DSC has also responded to discovery in the Culligan Lawsuit.

By letter dated September 10, 2009 – ten months after Culligan filed its amended complaint against DSC – DSC tendered to Lexington the defense to Culligan's amended complaint and requested indemnification for any potential adverse judgment in the Culligan Lawsuit under DSC's policies with Lexington. Pursuant to the terms and conditions of the policies and Illinois law, Lexington commenced its investigation of the claim and ultimately advised DSC, in a letter dated November 2, 2009 (the "Declination Letter"), that Lexington did not have a duty to indemnify or defend DSC in the Culligan Lawsuit. The Declination Letter further stated, "At this time, Lexington further notifies you that, pursuant to Illinois law, it will be filing a declaratory judgment action in the Circuit Court of Cook County, Illinois, Chancery Division, to determine its rights and liabilities." (Doc. 1-11, at 7.)

On November 6, 2009, Lexington filed this declaratory-judgment action against DSC pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57 to determine whether Lexington has a duty to defend and indemnify DSC in the Culligan Lawsuit. Among other things, Lexington claims that DSC's late notice bars coverage, that the policies do not cover breaches of contract, and that Lexington has no duty to defend DSC against the specific allegations in Culligan's amended complaint.

## LEGAL STANDARD

A district court may stay or dismiss an action seeking a declaratory judgment pursuant to 28 U.S.C. § 2201(a) in "the sound exercise of its discretion." *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995); *see also Sta-Rite Indus., Inc. v. Allstate Ins. Co.*, 96 F.3d 281, 287 (7th Cir. 1996).

When considering a motion to dismiss, well-pleaded allegations in the complaint are accepted as true. *Turner/Ozanne v. Hymann/Power*, 111 F.3d 1312, 1319 (7th Cir. 1997). Any ambiguities in the complaint are construed in favor of the plaintiff. *Kelly v. Crosfield Catalysts*, 135 F.3d 1202, 1205 (7th Cir. 1998). In considering a Rule 12(b)(3) motion to transfer venue, the court may also examine facts outside the complaint. *See Rotec Indus., Inc. v. Aecon Group, Inc.*, 436 F. Supp. 2d 931, 933 (N.D. Ill. 2006). Similarly, in considering a Rule 12(b)(1) motion, the court "may properly look beyond the jurisdictional allegations of the complaint and view whatever evidence has been submitted on the issue to determine whether in fact subject matter jurisdiction exists." *Long v. Shorebank Dev. Corp.*, 182 F.3d 548, 554 (7th Cir. 1999).

## ANALYSIS

DSC argues that venue is not proper in this Court because of Lexington's Declination Letter and that Lexington's declaratory-judgment claim is not ripe because the Circuit Court of Cook County has not adjudicated the underlying litigation against DSC. Both arguments are discussed separately below.

*DSC's Motion to Dismiss for Improper Venue Pursuant to Federal Rule of Civil Procedure 12(b)(3)*

DSC does not contend that this Court lacks diversity jurisdiction over Lexington's cause of action. Nor does DSC argue that venue is improper under 28 U.S.C. § 1391(a), which governs the selection of venue in civil actions founded only on diversity of citizenship or that Lexington, as the plaintiff, has a general right to select this forum for its declaratory-judgment action. Instead, DSC argues that by sending a letter indicating that Lexington would file an action in Cook County, Lexington legally bound itself to that forum at the exclusion of all others. DSC's argument is meritless.

First, the Declination Letter does not constitute a binding contract. In determining whether a contract exists, a federal court applies substantive state law governing the formation of contracts. *See Liu v. T & H Mach., Inc.*, 191 F.3d 790, 795 (7th Cir. 1999). When the district court's subject-matter jurisdiction is premised on diversity of citizenship under 28 U.S.C. § 1332, the district court applies the substantive law of the forum state as it believes the courts of that state would apply it. *Davis v. G.N. Mortgage Corp.*, 396 F.3d 869, 876 (7th Cir. 2005).

In this case, jurisdiction is premised solely on diversity of citizenship, and both parties rely on Illinois law when addressing this issue in their briefs. Accordingly, the Court will apply Illinois law in order to determine whether the Declination Letter contained an enforceable forum-selection clause. *See Cont'l Cas. Co. v. Am. Nat'l Ins. Co.*, 417 F.3d 727, 734 n.8 (7th Cir. 2005) (applying Illinois contract law when parties did not dispute its applicability); *Gould v. Artisoft, Inc.*, 1 F.3d 544, 549 n.7 (7th Cir. 1993) ("Where the parties have not identified a conflict between the two bodies

of state law that might apply to their dispute, we will apply the law of the forum state – here, Illinois.").

The principles of Illinois contract law to be applied to this case are well settled. A valid contract requires an offer, acceptance, and consideration. *Van Der Molen v. Washington Mut. Fin., Inc.*, 835 N.E.2d 61, 69 (Ill. App. Ct. 2005) (citing cases). Additionally, there must be mutual assent by the parties – i.e., a meeting of the minds to the essential terms and conditions of the contractual relationship. *IMI Norgren, Inc. v. D & D Tooling Mfg., Inc.*, 306 F. Supp. 2d 796, 801-02 (N.D. Ill. 2004) (citing *Pritchett v. Asbestos Claims Mgmt. Corp.*, 773 N.E.2d 1277, 1282 (Ill. App. Ct. 2002)); *Reese v. Forsyth Mergers Group, Inc.*, 682 N.E.2d 208, 213 (Ill. App. Ct. 1997) (*Reese*). To be enforceable, a contract's terms must be reasonably certain or able to be determined. *See DiLorenzo v. Valve & Primer Corp.*, 807 N.E.2d 673, 678 (Ill. App. Ct. 2004) (citations omitted). In other words, the court must be able to ascertain what it is the parties have agreed to do; if the essential terms are so uncertain that the court cannot make this determination, there is no contract. *Id.* The existence of a contract is generally a question of fact; but when the relevant facts are not in dispute, it is appropriate for the court to consider the issue as a matter of law. *See Reese*, 682 N.E.2d at 213 (citations omitted).

Here, there is no indication that the parties mutually assented to the terms of the Declination Letter. The "forum-selection clause" that DSC seeks to enforce was one sentence contained in a nine-page letter signed only by Lexington. As DSC notes, under Illinois law, "if a document is signed by the party being charged, the other party's

signature is not necessary if the document is delivered to that party and she indicates acceptance through performance." *Meyer v. Marilyn Miglin, Inc.*, 652 N.E.2d 1233, 1239 (Ill. App. Ct. 1995). But DSC does not contend that the Declination Letter was an offer that DSC accepted by performance. Instead, DSC simply labels the Declination Letter as a valid forum-selection clause and argues that the fact that it was included in a letter renders it valid and enforceable. This is insufficient to establish the existence of an enforceable contract under Illinois law. The only contracts alleged in this action are the policies of insurance, neither of which contains a forum-selection clause.

Second, relying on the same sentence in Lexington's Declination Letter, DSC argues that Lexington waived its right to select this Court as the venue for its declaratory-judgment action. Waiver is "an equitable principle invoked to further the interests of justice whenever a party initially relinquishes a known right or acts in such a manner as to warrant an inference of such relinquishment." *Mollihan v. Stephany*, 368 N.E.2d 465, 470 (Ill. App. Ct. 1997). It is a unilateral act; detrimental reliance by the insured is not required. *Chatham Corp. v. Dann Ins.*, 812 N.E.2d 483, 494 (Ill. App. Ct. 2004) (citation omitted). Waiver must be established by a preponderance of the evidence. *Pantle v. Indus. Comm'n*, 335 N.E.2d 491, 494 (Ill. 1975).

The cases cited by DSC do not support its argument that Lexington's Declination Letter constitutes an express waiver of Lexington's right to choose the Northern District of Illinois as the venue for its declaratory-judgment action. In *Neirbo v. Bethlehem Shipbuilding Co.*, 308 U.S. 165, 168 (U.S. 1939) (*Neirbo*), the Supreme Court stated that a *defendant's* right to object to venue is a "privilege," which "may be lost by failure to

assert it seasonably, by formal submission in a cause, or by submission through conduct." *Neirbo* interpreted a now-outdated venue statute and held that the defendant in that case had consented to the jurisdiction of a court by designating an agent for service of process in that state. *Id.* at 174-75. In no way does the case support DSC's argument that a *plaintiff* waives its choice of venue by unilaterally stating a proposed venue in a letter sent before filing suit. The same is true of other cases cited by DSC. *See Am. Patriot Ins. Agency, Inc. v. Mut. Risk Mgmt. Ltd.*, 364 F.3d 884, 887-88 (7th Cir. 2004) (stating that a *defendant* can waive his right to object to venue "if he stalls in pleading improper venue"); *United States v. Rogan*, No. 02 C 3310, 2008 WL 4853478, at *2 (N.D. Ill. Nov. 3, 2008) (holding that *defendant* waived right to challenge venue by producing documents in the litigation).

The remaining cases cited by DSC are similarly inapposite. *See Ins. Corp. of Ireland, Ltd. v. Bd. of Trs. of S. Ill. Univ.*, 937 F.2d 331, 337 (7th Cir. 1991) (holding that insurer waived coverage defenses by approving the insured's defense without any reservation); *Nw. Nat'l Ins. Co. v. Donovan*, 916 F.2d 372, 375 (7th Cir. 1990) (holding that the execution of a valid forum-selection clause in a bilateral contract constitutes waiver of the right to choose another venue); *In re Estate of Ferguson*, 730 N.E.2d 1205, 1211 (Ill. App. Ct. 2000) (holding that express, executed waiver of statutory spouse award could not be withdrawn).

DSC's Motion does not contain a single authority holding that an insurer's notification that a declaratory action is going to be filed in one venue bars the insurer from ultimately filing the action in an alternative, equally viable forum. To show that

Lexington waived its right to choose the venue of its own litigation, DSC has the burden of establishing that Lexington intentionally relinquished a known right. DSC has not done so.

Third, DSC argues that Lexington is equitably estopped from pursuing its action in this Court. To establish a charge of estoppel, DSC must prove the following: (1) it was misled by the actions or statements of Lexington; (2) it relied on those representations; (3) such reliance was reasonable; and (4) detriment or prejudice was suffered based on that reliance. *Lumbermen's Mut. Cas. Co. v. Sykes*, 890 N.E.2d 1086, 1101 (Ill. App. Ct. 2008) (citations omitted). Focusing on the detrimental-reliance element, estoppel "necessarily requires prejudicial reliance on the part of the insured"; and "the burden of establishing prejudice rests with the insured and must be proved by clear, concise, and unequivocal evidence." *Laycock v. Am. Family Mut. Ins. Co.*, 682 N.E.2d 382, 386 (Ill. App. Ct. 1997). "Prejudice cannot be presumed from the mere allegation that plaintiffs were lulled into a false sense of security without allegations or evidence of a resulting loss or action to their detriment." *Id.*

The Declination Letter was received by DSC on November 5, 2009; the Lexington Complaint was filed on November 6, 2009. It is hard to imagine, and DSC has not brought to this Court's attention, any action or inaction was taken to DSC's detriment in this short period of time. Prejudice cannot be presumed; and DSC has not overcome the burden of establishing this element by clear, concise, and unequivocal evidence. DSC does not assert that it was prepared to file a declaratory-judgment action against Lexington, let alone that it postponed doing so for the one-day period between the receipt

of the Declination Letter and Lexington's filing suit. Instead, DSC merely asserts that it relied on the Declination Letter and was entitled to do so. This conclusory assertion fails to demonstrate that DSC was prejudiced at the hand of Lexington. Indeed, it appears that DSC is in the same position it would have been had the Declination Letter been devoid of any language with regard to filing suit in the Circuit Court of Cook County.

*DSC's Motion to Dismiss for Lack of Ripeness Pursuant to Federal Rule of Civil Procedure 12(b)(1)*

DSC also argues that even if venue is proper in this Court, Lexington's Complaint should be dismissed because the action is not ripe until the Culligan Lawsuit is adjudicated and the Circuit Court of Cook County determines whether DSC is liable for damage to Culligan's property.

Under Illinois law, an insurer has two options when faced with a potential claim it believes is not covered by its insurance policy: "(1) defend the lawsuit under a proper reservation of rights, or (2) secure a declaratory judgment about its obligations under the policy prior to trial." *Utica Mut. Ins. Co. v. David Agency Ins., Inc.*, 327 F. Supp. 2d 922, 927 (N.D. Ill. 2004) (citing *Employers Ins. of Wausau v. Ehlco Liquidating Trust*, 708 N.E.2d 1122, 1134-35 (Ill. 1999); *Royal Ins. Co. v. Process Design Assoc., Inc.*, 582 N.E.2d 1234, 1239 (Ill. App. Ct. 1991)). An insurer that fails to do so will be estopped from raising policy defenses to coverage against the insured. *Id.*

In *Nationwide Ins. v. Zavalis*, 52 F.3d 689, 697 (7th Cir. 1995) (*Nationwide*), the Seventh Circuit held that a district court abused its discretion by dismissing an insurer's claims for a declaratory judgment regarding its duty to defend an insured in a pending state-court case. The court noted that "[t]he insurance company's obligation to supply a

defense is most often determined primarily, if not exclusively, from the face of the underlying complaint against the insured," *id.* at 693, and that the insurer's duty to defend in that case "can be evaluated without any excursion into factfinding that would interfere with the . . . underlying state court suit," *id.* at 695.

In *Sears, Roebuck & Co. v. Zurich Inc. Co.*, 422 F.2d 587, 588 (7th Cir. 1970) (*Sears*), a customer sued Sears in Massachusetts state court, alleging that a defective product caused damage to his property. Sears tendered the defense of that action to Zurich; Zurich refused to defend on behalf of Sears in the underlying action and filed a declaratory-judgment action in the Northern District of Illinois. *Id.* The district court dismissed the action *sua sponte*, holding that it belonged in state court. *Id.* The Seventh Circuit reversed, holding that the district court did not properly exercise its discretion. *Id.* at 590. In doing so, the court stated, "The controversy between Sears and Zurich involves the duty to defend, timely notice and co-operation. These issues will not be determined in the [underlying] action and are ripe for review in the District Court of Illinois. Determination of these issues by the District Court will relieve the parties from hereafter acting at their peril." *Id.*

Like the declaratory-judgment actions in *Nationwide* and *Sears*, the determination of whether Lexington has a duty to defend in this case is ripe for determination and should be adjudicated to prevent Lexington or DSC from acting at its peril. Similarly, the determination of whether Lexington has a duty to indemnify DSC if Culligan prevails against DSC can be determined without awaiting resolution of the Culligan Lawsuit.

In *Nationwide*, the Seventh Circuit held that the district court did not abuse its discretion in dismissing the insurer's claims for a declaratory judgment on the issue of indemnity. *Id.* at 693. In doing so, the court noted that the district court's resolution of the indemnity issue "would necessarily require it to address a factual question at the heart of [the underlying litigation] – namely, whether the widespread damage [defendants] caused was in fact intentional or, at the least, expected – and thus beyond the policy coverage – or entirely inadvertent." *Id.*

In this case, however, DSC has not identified any factual question that must be resolved in the Culligan Lawsuit. In Lexington's Count VII – the only count specifically addressed in DSC's Motion to Dismiss for lack of ripeness – Lexington alleges that Culligan's amended complaint does not plead any single occurrence of direct physical loss or damage that exceeds the applicable deductible limits in DSC's insurance policies. (Compl. ¶ 64.) Nor does DSC argue that any of Lexington's remaining counts present factual issues that must be resolved in state court, and it appears that none of them do. Thus, this Court can accept all of Culligan's allegations as true for purposes of this declaratory-judgment action and determine whether Lexington would have any duty to indemnify DSC in the Culligan Lawsuit if Culligan prevails.

DSC argues that declaratory-judgment claims relating to an insurer's duty to indemnify are always premature if asserted before the insured actually incurs liability on a claim against it, relying on *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 607 N.E.2d 1204, 1221 (Ill. 1992) (*Outboard Marine*), which states that "the question of whether the insurer has a duty to indemnify the insured for a particular liability is only

ripe for consideration if the insured has already incurred liability in the underlying claim against it." But *Outboard Marine* involved a declaratory-judgment action brought by the *insured*, and the trial court was addressing the insurer's motion for summary judgment. *Id.* Contrary to DSC's assertion here, the Supreme Court of Illinois in that case did not "hold" that the indemnity issue was not ripe until the underlying suit was adjudicated; rather, the court determined that the insured had already been found liable and proceeded to address the issue of indemnity. *Id.* at 1221-22. Finding numerous factual disputes, the Supreme Court reversed the grant of summary judgment for the insurers. *Id.* at 1222.

In this case, the resolution of this declaratory-judgment action does not require the prior resolution of the Culligan Lawsuit, and Lexington claims the allegations in Culligan's amended complaint do not implicate coverage under Lexington's policies. DSC has not identified a single case in which a declaratory-judgment action for indemnity was dismissed on ripeness grounds, and federal courts faced with the discretionary choice of whether to stay a declaratory-judgment action are directed to consider equitable factors, including the following:

> whether the declaratory suit presents a question distinct from the issues raised in the state court proceeding, whether the parties to the two actions are identical, whether going forward with the declaratory action will serve a useful purpose in clarifying the legal obligations and relationships among the parties or will merely amount to duplicative and piecemeal litigation, and whether comparable relief is available to the plaintiff seeking a declaratory judgment in another forum or at another time.

*Nationwide*, 52 F.3d at 692 (citation omitted).

In considering those factors, a district court in this circuit denied a motion to abstain or stay a declaratory-judgment action brought by an insurer on the issue of

indemnity because the insured had not shown that resolution of that issue required fact finding that could conflict with facts found by the court in which the underlying suits were filed. *See Scottsdale Ins. Co. v. Subscriptions Plus, Inc.*, 195 F.R.D. 640, 647 (W.D. Wis. 2000). The court further stated, "[B]ecause coverage questions are not at issue in the state court actions at this time, deciding those questions in this forum will serve the useful purpose of clarifying the legal obligations among the parties and will not result in duplicative or piecemeal litigation." *Id.* The same is true in this case. DSC chose to wait ten months after being served with Culligan's amended complaint before tendering a defense to Lexington. Lexington is not a party to that action, and coverage questions are not there at issue. Lexington brought the instant action to clarify its legal obligations with regard to DSC. Accordingly, DSC's Motion to Dismiss on the grounds of ripeness is also denied.

**CONCLUSION**

For the reasons stated above, DSC's Motion to Dismiss Lexington's Complaint for Declaratory Judgment under Federal Rule of Civil Procedure 12(b)(3) and 12(b)(1) is denied.

Date: May 6, 2010

JOHN W. DARRAH
United States District Court Judge